**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| HARLEYSVILLE LAKE STATES INSURANCE COMPANY, an Ohio Corporation; and HARLEYSVILLE INSURANCE COMPANY, an Ohio Corporation, | No. 21-cv-01710 |
| Plaintiffs, | Judge John F. Kness |
| v. | |
| THERMOFLEX WAUKEGAN, LLC., a Delaware limited liability company, THERMOFLEX CORPORATION, an Illinois Corporation, and GREGORY GATES, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

This case concerns an insurance coverage dispute between Defendants Thermoflex Waukegan, LLC and Thermoflex Corporation (collectively "Thermoflex") and their insurance company, Plaintiffs Harleysville Lake States Insurance Company and Harleysville Insurance Company (collectively "Harleysville"), over whether Harleysville has a duty to defend Thermoflex in an underlying class action lawsuit (the "Gates lawsuit"). That state court case involves allegations that Thermoflex violated the Illinois Biometric Information Privacy Act ("BIPA") when it required temporary hourly workers to use their handprints to clock in and clock out for attendance. Although the parties agree that the relevant insurance policies

presumptively apply to BIPA claims, they primarily dispute in cross-motions for summary judgment whether two exclusions, the "Violations of Law" exclusion (included in all policies) and the "Access or Disclosure" exclusion (included in only the 2017 policy), bar coverage.

Neither the parties nor the Court write on a blank slate. The proliferation of BIPA actions, and the resulting insurance disputes, have made this a developing area of law. Both sides submitted several notices of supplemental authority during the pendency of the parties' initial motions for summary judgment. To account for these new cases, the Court asked for updated briefing and oral argument on the issue.

A close review of those materials shows that two appellate cases are paramount: *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Insurance USA, Inc.*, 102 F.4th 438 (7th Cir. 2024), a case that concerned the same insured party (Thermoflex) and the same underlying lawsuit (the Gates lawsuit),[1] and *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 135 F.4th 1082 (7th Cir. 2025), where the Court of Appeals examined near-identical policy exclusions and held that the "Violations of Law" exclusion did not bar coverage but the "Access or Disclosure" did bar coverage.[2] In the absence of directly on-point Illinois precedent on the issue, this Court is bound by the Seventh Circuit's interpretation of state law; accordingly, the Court cannot rely, as Harleysville suggests, on opinions from an intermediate Illinois

---

[1] *See Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 595 F. Supp. 3d 677, 679 (N.D. Ill. 2022), *aff'd*, 102 F.4th 438 (7th Cir. 2024) ("Gregory Gates filed a class action lawsuit in Illinois state court against Thermoflex and a temporary employment agency.")

[2] These are the names of the policy exclusions used by the parties in this matter. As discussed below, the exclusions are substantively similar to those in *Mitsui*.

appellate court and from another case in this District that came out differently on the "Violations of Law" exclusion. *Mitsui* and *Mullins* decide the present dispute.

Because the 2017 policy includes the "Access or Disclosure" exclusion, Harleysville has no duty to defend for that policy year. The 2015–16 policies, however, lack this exclusion, so Harleysville has a duty to defend under those policies. Accordingly, Thermoflex is entitled to summary judgment in its favor on its declaratory judgment counterclaims as to the 2015–16 policies (Counts I–II). It is not, however, entitled to summary judgment as to breach of contract (Counts III–IV) because Illinois law maintains that an insurer may bring a declaratory judgment action in lieu of assuming its duty to defend. As a result, Harleysville has technically not yet breached. That said, as the Seventh Circuit recently articulated in *Mullins*, Harleysville "will be liable to [Thermoflex] for the costs and fees [Thermoflex] has incurred in defending itself in [the Gates lawsuit]" under the 2015–16 policies. 2025 WL 1276033, at *13.

Harleysville also brings a motion for summary judgment on Count V of Thermoflex's amended counterclaims, which alleges that Harleysville engaged in bad faith under Section 155 of the Illinois Insurance Code when it demanded that Thermoflex withdraw its tender of defense following the *Mitsui* decision. As described below, bad faith under Section 155 is not a standalone claim, but is rather a mechanism to seek attorney fees. That said, the parties briefed the issue, and upon consideration, the Court finds that, at least on the present record, Harleysville's position was not so vexatious or unreasonable as to constitute bad faith.

## I.    BACKGROUND

On July 27, 2020, Gregory Gates filed a putative class action captioned *Gregory Gates v. Thermoflex Waukegan, LLC, et al.*, Case No. 20 CH 00000479, in the Circuit Court of Lake County, Illinois (the "Gates lawsuit"). (Dkt. 31 ¶ 17.)[3] The Gates lawsuit alleges that Thermoflex violated BIPA when it required temporary hourly workers to use their handprints to clock in and clock out for attendance. (Dkt. 33 ¶¶ 20–26.) Thermoflex tendered the Gates lawsuit to Harleysville and demanded a timely defense and indemnification, but Harleysville denied coverage, prompting Thermoflex to undertake its own defense. (Dkt. 31 ¶¶ 28–30.)

Plaintiff Harleysville Lake States Insurance Company issued a series of commercial general liability policies under policy no. MPA4685M to Thermoflex Corporation, with Thermoflex Waukegan, LLC listed as a named insured, effective for consecutive annual periods from January 1, 2015 through January 1, 2018 (the "CGL Policies") (consisting of the 2015, 2016, and 2017 policies). (*Id.* ¶ 9.) Plaintiff Harleysville Insurance Company issued a series of commercial liability umbrella policies under policy no. CMB42884B to Thermoflex Corporation, with Thermoflex Waukegan, LLC listed as a named insured, effective for consecutive policy periods from January 1, 2015 through January 1, 2018 (the "Umbrella Policies") (also

---

[3] In accordance with the Local Rules, Thermoflex filed Rule 56.1 statements at Dkt. 31, 82. Having reviewed the Docket, it appears that Harleysville has not filed responses to those statements. *See* N.D. Ill. L.R. 56.1(b)(2). Accordingly, the facts in Dkt. 31, 82 are deemed admitted. *See* N.D. Ill. L.R. 56.1(e)(3) ("Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."). Moreover, in Thermoflex's response to Harleysville's initial statement of facts (Dkt. 33), Thermoflex at times objected for lack of sufficient citations but then stated that those same facts were "Admitted." The Court construes such facts as admitted.

consisting of the 2015, 2016, and 2017 policies). (*Id.* ¶ 10.) Both the CGL and Umbrella policies provide coverage for "personal and advertising injury," which includes injury arising out of the publication of material that violates a person's "right of privacy." (*Id.* ¶¶ 11–15.)

The policies include several relevant exclusions. First, they include a "Recording and Distribution of Material in Violation of Law Exclusion" ("Violations of Law Exclusion") which bars coverage for personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate:

> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Dkt. 33 ¶¶ 8, 18; Dkt. 76 at 6–7; *e.g.*, Dkt. 1-5 at 34.) Second, the policies contain an "Employment-Related Practices Exclusion," which, in relevant part, bars coverage of personal and advertising injury to a person arising out of any:

> Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person.

(Dkt. 33 ¶¶ 9, 17.) Third, the 2017 policies contain an "Access or Disclosure" exclusion which, in relevant part, bars coverage of personal and advertising injury arising out of:

> [A]ny access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

5

(*Id.* ¶¶ 10, 19.)

Fourth, the policies each contain a "Knowing Violations of Rights" exclusion, which excludes coverage for personal and advertising injury "caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' " (Dkt. 76 at 10 (citing Dkt. 1 ¶ 34); Dkt. 79 at 10; *see, e.g.*, Dkt. 1-5 at 22.)

Harleysville has declined to provide a defense and instead chose to file the present complaint for declaratory judgment seeking a declaration that Harleysville owes no duty to defend. (Dkt. 33 ¶ 31.) Thermoflex responded with counterclaims for declaratory judgment as to the duty to defend (Counts I, II) and for breach of contract (Counts III, IV). (*Id.* ¶ 32.) On December 21, 2021, Harleysville filed its initial motion for summary judgment, and on January 24, 2022, Thermoflex filed its initial motion for partial summary judgment. (Dkt. 81 ¶¶ 1–2.) During the pendency of those motions, the parties filed several notices of supplemental authority. (*Id.* ¶ 4.) Those included notice of the 2023 Illinois Appellate Court decision in *Nat'l Fire Ins. Co. of Hartford & Cont'l Ins. Co. v. Visual Pak Co., Inc.*, 2023 IL App (1st) 221160 and the 2024 Seventh Circuit decision in *Thermoflex Waukegan, LLC v. Mitsui Sumitomo Ins. USA, Inc.*, 102 F.4th 438 (7th Cir. 2024), among others. (*Id.* ¶¶ 4–7.) Harleysville nevertheless maintained that it had no duty to defend, prompting Thermoflex to seek to amend its counterclaims to include a claim for bad faith under 215 ILCS 5/155. (*See* Dkt. 64, Dkt. 81 ¶ 10.)

On September 30, 2024, to consider the developing law, the Court dismissed

both pending motions for summary judgment without prejudice, set a deadline for renewed motions, and gave Thermoflex leave to file its amended counterclaims. (Dkt. 63.) Harleysville then filed the present renewed motion for summary judgment (Dkt. 72) and Thermoflex filed the present renewed motion for partial summary judgment (Dkt. 74), on which the Court heard oral argument. (Dkt. 90.)

## II.    STANDARD OF REVIEW

Summary judgment is warranted only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jewett v. Anders*, 521 F.3d 818, 821 (7th Cir. 2008) (quoting *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322−23 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. As the " 'put up or shut up' moment in a lawsuit, summary judgment requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quotations omitted).

## III.    DISCUSSION

The parties primarily dispute whether any exceptions in the relevant policies

preclude coverage for the underlying BIPA claims. Accordingly, the Court first considers each relevant exclusion in turn. Finding that no exception applies for the 2015 or 2016 policies, but that the "Access or Disclosure" exception bars coverage under the 2017 policy, the Court then turns to Harleysville's duty to defend under the 2015 and 2016 policies, the breach of contract dispute, and whether Harleysville has engaged in bad faith.

### A. "Violations of Law" Exclusion

The "Violations of Law" exclusion, contained in all three policy years, does not bar coverage under the Seventh Circuit's interpretation of Illinois law in *Mitsui*, 102 F.4th 442. The exclusion, entitled "Recording and Distribution of Material in Violation of Law Exclusion," bars coverage of personal and advertising injury arising directly or indirectly out of any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act ("TCPA"), the CAN-SPAM Act,[4] and the Fair Credit Reporting Act ("FCRA"), including the Fair and Accurate Credit Transaction Act ("FACTA"). (Dkt. 33 ¶ 8; *e.g.*, Dkt. 1-5 at 34.) The exception also includes a catchall provision that also bars coverage for:

> (4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

---

[4] The full title is the "Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003." *Lime Crunch Inc. v. Johansen*, 675 F. Supp. 3d 889, 893 (N.D. Ill. 2023).

(Dkt. 33 ¶¶ 8, 18; Dkt. 1-5 at 34; Dkt. 76 at 6–7.)

The parties dispute whether BIPA fits under this catchall provision. Harleysville asserts that it does because the title of the exclusion is "every bit as important as the language" of the exclusion itself, and the title's reference to the "Recording . . . of Material in Violation of Law" confirms that the catchall includes BIPA claims. (*See* Dkt. 72 at 4–8.) For support, Harleysville cites *Visual Pak*, 2023 IL App (1st) 221160, which found that the catchall provision in an analogous exclusion (that had a similar title) encompassed BIPA. First, *Visual Pak* found that the plain meaning of the catchall provision references the disposal, collection, and recording of information, which necessarily includes BIPA. *Id.* ¶¶ 54–56. Second, *Visual Pak* stressed that the word "recording" in the title of the exclusion broadens the catchall's meaning beyond referring to modes of communication to include the protection of privacy. *Id.* ¶¶ 60–78. But *Visual Pak* emphasized that its holding was in tension with Seventh Circuit precedent finding that this exclusion does not apply to BIPA claims. *See id.* ¶¶ 43–44 (citing *Citizens Insurance Co. of America v. Wynndalco Enterprises, LLC*, 70 F.4th 987, 997 (7th Cir. 2023)). *Wynndalco* found that a similar catchall provision was ambiguous (even after the application of textual canons), and because ambiguity must be construed against the insurer "and in favor of the insured," the exclusion did not apply. *Wynndalco*, 70 F.4th at 999–1005.

Both *Visual Pak* and *Wynndalco*, however, preceded *Mitsui*. In *Mitsui*, the Court of Appeals rejected the invitation to overrule *Wynndalco* based on *Visual Pak*; instead, it put both to the side and focused on *West Bend Mutual Insurance Co. v.*

*Krishna Schaumburg Tan, Inc.*, 2021 IL 125978, an Illinois Supreme Court decision that held that a similar exclusion (which mentioned only the TCPA and the CAN-SPAM Act, but not FCRA) did not apply to BIPA. *Mitsui*, 102 F.4th at 442.

*Krishna* applied the doctrine of *ejusdem generis*—a "canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed,"[5]—to its interpretation of the insurance contract. *See Krishna*, 2021 IL 125978 ¶¶ 53–60. In holding that the exclusion did not apply to BIPA, *Krishna* reasoned that, "since [BIPA] is not a statute of the same kind as the TCPA and the CAN-SPAM Act and since [BIPA] does not regulate methods of communication [like those other statutes], the violation of statutes exclusion does not apply." *Id.* ¶ 58. Although the exclusion in *Krishna* referred only to the TCPA and the CAN-SPAM Act, the exclusion in *Mitsui* also referenced FCRA; but the Seventh Circuit saw no reason to think that the addition of FCRA altered *Krishna's* holding. *See Mitsui*, 102 F.4th at 442 ("The Statutory Violation Exclusion to Coverage U in Thermoflex's policy begins with the same two statutes as the policy in *Krishna* and adds a third, the Fair Credit Reporting Act. One need not get beyond the name of that statute to see how different it is from BIPA.").

Both Harleysville and Thermoflex agree that the only substantive difference between the Violations of Law exclusion in this case as compared to *Mitsui* is that the exclusion here has a title. Harleysville asserts that this is a significant distinction

---

[5] EJUSDEM GENERIS, Black's Law Dictionary (12th ed. 2024).

that permits the Court to depart from *Mitsui* in favor of *Visual Pak*. (Dkt. 72 at 5.) For support, Harleysville leans on *Westfield Ins. Co. v. UCAL Sys., Inc.*, in which another judge in this District found that a similarly titled exclusion encompassed BIPA (thereby excluding coverage). No. 21 CV 3227, 2024 WL 3650118, at *7–12. (N.D. Ill. Aug. 5, 2024). *Westfield* reached this decision after, but without reference to, the contrary holding from *Mitsui. See id.*

Also relevant is *Mullins*, which was decided after the parties concluded briefing on the present motions.[6] In that case, the Court of Appeals reaffirmed *Mitsui* and held that it left "no doubt as to how we should read the catchall provision here . . . [:] the catchall provision does not include BIPA violations." *Mullins*, 135 F.4th at 1094.

*Westfield*'s analysis is detailed and thoughtful, but *Mitsui* ruled that a near-identical policy exclusion did not apply to BIPA claims, and Harleysville's only substantive argument to the contrary is that, unlike in *Mitsui*, there is a title in the present policy. But the Court of Appeals in *Mullins* has now foreclosed this argument. It held that the lack of a heading in *Mitsui* "d[id] not counsel in favor of a different result." *Mullins*, 135 F.4th at 1094 n.5 (violation of law exclusion with a nearly identical title to the policy at issue here did not broaden the exclusion to cover BIPA). *Mitsui* and *Mullins* are clear: the "Violations of Law" exclusion does not bar coverage.

---

[6] Thermoflex filed the case on the docket in a notice of supplemental authority. (Dkt. 91.)

### B.    "Access or Disclosure" Exclusion

The parties next dispute the applicability of the "Access or Disclosure" exclusion, which is present only in the 2017 policy. This exclusion states that the insurance does not apply to:

> **Access Or Disclosure of Confidential Or Personal Information**
> "Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information <u>or any other type of nonpublic information</u>.

(Dkt. 33 ¶¶ 10, 19 (emphasis added).)

*Mitsui* affirmed that an analogous "Access or Disclosure" exclusion applied to BIPA and barred insurance coverage because the ordinary understanding of "confidential or personal information" and "any other type of nonpublic information" includes "handprints and other biometric identifiers usable for identity theft." *Mitsui*, 102 F.4th at 440–41. Thermoflex argues that this portion of *Mitsui* was wrongly decided because the Court of Appeals should have, but did not, analyze this exclusion under *Krishna*. (Dkt. 80 at 9–11.)

As with the "Violations of Law" exclusion, the Court of Appeals reaffirmed its holding in *Mullins* and noted that *Mitsui* left "no doubt that the Access or Disclosure Exclusion bars coverage for BIPA claims." 2025 WL 1276033, at *7. Given that the "Access or Disclosure" exclusion in the 2017 policy is nearly identical to the exclusions considered in *Mitsui* and *Mullins*, the interpretation of the Court of Appeals governs. Thermoflex effectively admits as such when it "acknowledge[s] the Court's holding in

*Mitsui*, as [it] must." (Dkt. 80 at 10.) Accordingly, the "Access or Disclosure" exclusion in the 2017 policy applies, so Harleysville has no duty to defend under the 2017 policy.

### C. "Knowing Violation of Rights" Exclusion

In its motion for partial summary judgment, Thermoflex also argues that the "Knowing Violation of Rights" exclusion is inapplicable and does not bar coverage because the underlying Gates lawsuit alleges negligence. (Dkt. 76 at 10–12.) This exclusion provides that the insurance does not apply to:

> **Knowing Violation Of Rights Of Another**
> "Personal and advertising injury" caused by or at the direction of the insured <u>with the knowledge</u> that the act would violate the rights of another and would inflict "personal and advertising injury."

(Dkt. 79 at 10 (emphasis added); *see also* Dkt. 1-5 at 22; Dkt. 76 at 10 (citing Dkt. 1 ¶ 34).) Harleysville argues that this policy exclusion applies "to the extent that any potential judgment and/or other finding against Thermoflex is based upon any intentional, reckless, or knowing acts." (Dkt. 79 at 10.) But as Thermoflex correctly points out, the Gates lawsuit alleges that Thermoflex "was at the very least negligent, if not reckless and intentional." (*E.g.*, Dkt. 79-2 ¶ 113.) Harleysville does not dispute that this exclusion is inapplicable as to negligence claims. (*See* Dkt. 79 at 10–11.)

The presence of a negligence allegation in the Gates lawsuit renders the exclusion inapplicable. Whether an insurer has a duty to defend is to be liberally construed in favor of the insured, and " 'if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy.' " *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 774 (7th Cir. 2016) (quoting

*Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098, (Ill. 2005)); *see also Admiral Ins. Co. v. Anderson*, 529 F. Supp. 3d 804, 810 (N.D. Ill. 2021) (citing cases). Because at least one of several theories (negligence) is within the potential coverage of the policy, the "Knowing Violation of Rights" exclusion does not bar coverage.[7]

### D.    Counterclaims

#### 1.    *Counts I–II (Duty to Defend)*

In Counts I and II of its First Amended Counterclaims, Thermoflex seeks a declaratory judgment that Harleysville has a duty to defend Thermoflex against the Gates lawsuit. (Dkt. 64 ¶¶ 38–49.) An "insurer's duty to defend its insured is much broader than its duty to indemnify its insured." *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). Accordingly, if the Gates lawsuit "states a claim that is within, or even potentially or arguably within, the scope of coverage provided by the policy," Harleysville must provide a defense. *Pipefitters Welfare Educ. Fund v. Westchester Fire Ins. Co.*, 976 F.2d 1037, 1039 (7th

---

[7] Thermoflex also argues that the "Employment Related Practices" exclusion in the 2015 and 2016 policies does not bar coverage for BIPA claims. (Dkt. 76 at 8–10.) As Thermoflex notes, Harleysville failed to respond and thus waived this point. (Dkt. 84 at 4–5.) In any event, *Mitsui* held that an analogous exclusion did not bar coverage for BIPA claims arising out of a general employment-related practice (as opposed to a practice directed toward a specific employee); and since the Gates lawsuit is concerned with a general employment-related practice, this exclusion does not apply. *See Mitsui*, 102 F.4th at 443.

Cir. 1992) (citing *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991)). Thermoflex seeks summary judgment on these counts. (Dkt. 74 ¶ 2.)

Harleysville does not point to a policy exclusion that would prohibit coverage under the 2015 and 2016 policies. Accordingly, Thermoflex need only point to one provision that "potentially or arguably" extends its coverage to the Gates lawsuit. That burden is easily satisfied. The Harleysville policies provide coverage for personal and advertising injury arising out of the publication of material that violates a person's right of privacy, (*e.g.*, Dkt. 31 ¶¶ 12–16), and the Illinois Supreme Court has held that BIPA suits implicate such privacy rights. *Krishna*, 2021 IL 125978, ¶ 46 (Under BIPA, disclosing a person's biometric identifiers or information without their consent or knowledge "necessarily violates that person's right to privacy in biometric information.").

Absent an applicable exclusion, Harleysville does not disagree that insurance coverage generally extends to an underlying BIPA lawsuit. Rather, it asserts that it owes no coverage here because the lead plaintiff in the Gates lawsuit, Larry Johnson,[8] worked at Thermoflex in 2018 (outside the applicable policy periods). (Dkt. 79 at 11, Dkt. 79-2 ¶ 47.) Harleysville argues that because the underlying class has not yet been (or may never be) certified, there is no "occurrence" triggering coverage within

---

[8] The initial putative Plaintiff was Gregory Gates, but per an amended complaint, Larry Johnson is the successor lead Plaintiff. (Dkt. 79 at 11.) Gates was likewise employed in 2018, so Harleysville's argument is agnostic as to whether Johnson or Gates is the lead Plaintiff. (*Id.*)

any of the Harleysville Policy Periods (which began in 2015 and expired on December 31, 2017). (Dkt. 79 at 11.)

That approach is not consistent with the insurer's broad duty to defend, which is triggered if the class action complaint states a claim that is "even potentially or arguably" within the scope of coverage. That standard is met here because the proposed class in the Gates lawsuit would encompass "[a]ll individuals who used a biometric timeclock at Thermoflex who had their fingerprints collected, captured, received, obtained, maintained, stored or disclosed . . . during the applicable statutory period," which is five years and runs from July 27, 2015 to July 27, 2020. (Dkt. 75-7 ¶ 116 (emphasis added); Dkt. 84 at 6–7; Dkt. 31 ¶ 17 (Gates lawsuit initially filed on July 27, 2020)); *see Tims v. Black Horse Carriers, Inc.*, 2023 IL 127801, ¶ 32.

Harleysville cites no law for the proposition that an insurer has no duty to defend a class action that has not yet been certified or where class claims, but not the claims of the lead plaintiff(s), are inside the policy period. That perfunctory argument has elsewhere been rejected and is inconsistent with the insurer's broad duty to defend where there is potential liability. *See Harleysville Preferred Ins. Co. v. Dude Prods., Inc*, No. 21 C 5249, 2022 WL 17832714, at *6 (N.D. Ill. Dec. 21, 2022) ("[B]ecause Harleysville fails to cite any legal authority suggesting that an insurer's duty to defend does not cover putative class members' claims, the Court finds that it has forfeited the argument."); *Atl. Cas. Ins. Co. v. Sealtite Roofing & Constr. Co.*, 73 F. Supp. 3d 953, 957 (N.D. Ill. 2014) ("[I]f the insurer wishes to avoid the duty to

defend, the insurer must show that the underlying lawsuit has no potential to lead to liability covered under the policy."); *Citizens Ins. Co. of Am. v. Highland Baking Co., Inc.*, No. 20-CV-04997, 2022 WL 1210709, at *1–2 (N.D. Ill. Mar. 29, 2022) (duty to defend putative class action). A class action alleging claims within the applicable policy period has some potential to lead to insurer liability. Accordingly, Thermoflex is entitled to a declaratory judgment that Harleysville has a duty to defend under the 2015 and 2016 policies.

### 2. Counts III-IV (Breach of Contract)

In Counts III and IV, Thermoflex claims that Harleysville is in breach of contract for failure to tender a defense to the underlying Gates lawsuit. (Dkt. 64 ¶¶ 50–61.) Thermoflex, but not Harleysville, seeks summary judgment on these counts. (Dkt. 74 ¶ 2).[9] Where, as here, an insurer contests its duty to defend, under Illinois law it may "(1) seek a declaratory judgment regarding its obligations before trial of the underlying action; (2) defend the insured under a reservation of rights; or (3) refuse either to defend or to seek a declaratory judgment at the insurer's peril that it might later be found to have breached its duty to defend and estopped from asserting defenses as to payment based on non-coverage." *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 349 (7th Cir. 2010) (citing *County Mut. Ins. Co. v. Olsak*, 908 N.E.2d 1091, 1098 (2009)); *see also James River Ins. Co. v. Canal Ins. Co.*, 534 F. Supp. 3d 962, 970 (N.D. Ill. 2021); *Those Certain*

---

[9] Harleysville says in the title of the relevant section of its brief that it seeks summary judgment on Thermoflex's first amended counterclaims but only provides argument as to the bad faith counterclaim. (Dkt. 72 at 10.) The Court therefore construes Harleysville's motion as seeking summary judgment only on that claim.

*Underwriters at Lloyd's v. Prof. Underwriters Agency, Inc.*, 848 N.E.2d 597, 604 (Ill. App. 2d Dist. 2006) ("[A]n insurer alleging a policy defense against its insured . . . is under no obligation to act on its alleged duty to defend until after the declaratory judgment action."); *Citizens Ins. Co. of Am. v. Mullins Food Prods., Inc.*, 684 F. Supp. 3d 762, 782–83 (N.D. Ill. 2023), *on reconsideration*, 719 F. Supp. 3d 822 (N.D. Ill. 2024) ("Under Illinois law, an insurer does not breach its duty to defend by contesting coverage and timely seeking a declaration that it owes no duty to defend.").

Harleysville is correct that its decision to file a declaratory judgment action in lieu of defending Thermoflex "suspend[ed] the duty to defend pending the resolution of the declaratory judgment action," which means that Harleysville was not in breach of contract during the pendency of this action. *Those Certain Underwriters*, 848 N.E.2d at 601. But now that the Court has adjudicated the cross-motions for summary judgment on the declaratory judgment counts (partially) in Thermoflex's favor, Harleysville is now "liable to reimburse [Thermoflex] for any costs of defense [Harleysville] should have paid." *Id.* at 604.

Under what legal theory Harleysville's liability should be characterized, now that the Court concludes it has a duty to defend, is an admittedly difficult question, as emphasized by *Mullins*, 135 F.4th at 1094-99. In *Mullins*, the Court of Appeals wrestled with this scenario, made complicated by the fact that "Illinois law is unclear is on what legal theory the obligation to compensate [the insured] can be made part of a judgment in its favor" if the Court finds that the insurer has a duty to defend. *Id.* at 1095. In the ideal course, the declaratory judgment action "would resolve the

insurer's duty to defend before the underlying claim proceeds to litigation, so that if the insured is owed a defense under the insurance policy, it is given one." *Id.* at 1097. But here, as in *Mullins*, the underlying claim proceeded to litigation before the declaratory judgment action resolved the duty to defend, which left Thermoflex to defend the underlying action on its own. The Court of Appeals reads *Those Certain Underwriters* as suggesting that, "once a court has entered a declaratory judgment recognizing that the insured is bound to defend its insured, the insurer *will be* liable in contract for the fees and costs the insured has shouldered to date." *Id.* at 1098 (emphasis added).

But Court of Appeals did not "resolve the appropriate theoretical basis for ordering [the insurer] to reimburse [the insured]" in such a situation. *Id.* Rather, it confirmed the end result—that the insurer "will be liable to reimburse [the insured] for its fees and costs in defending" the underlying action[10]—and provided the district court a menu of options for recognizing this liability in a judgment:

> One way to do so might be to distinguish between a breach of the duty to defend so serious that it amounts to a repudiation of the insurance agreement—thus meriting estoppel—and a more quotidian breach that results only in liability for defense costs. **Another might be to say that the insurer's duty to defend is suspended upon filing an action for declaratory judgment and remains so until such time as the court finds that the insurer is obligated to defend the insured, at which point the insurer becomes retroactively liable for failing to defend its insured and will now owe the insured a defense going forward (if the underlying claim remains unresolved) and reimbursement for its accrued defense costs as an "amount due," but not as damages for a breach of contract.** Either view would be based on the contract, and in this case, relief presumably could be ordered pursuant to Mullins' contractual claim.

---

[10] *Id.* at *1.

Alternatively, **the obligation to compensate Mullins could be made part of the relief on its counterclaim for declaratory relief.**

*Id.* at 1099 (emphasis added). In all likelihood, the approach highlighted above is most consistent with Illinois law, at least given that the Gates lawsuit is ongoing. Harleysville has a duty to defend Thermoflex consistent with the terms of this opinion, and as such, it is both retroactively liable and must assume its duty to defend going forward. The obligation to compensate will be made part of the declaratory judgment.[11]

### 3. *Count V (Bad Faith)*

At the last, the Court turns to Harleysville's motion for summary judgment as to Thermoflex's most recently filed counterclaim, which alleges that Harleysville is liable for bad faith under 215 ILCS 5/155 for asserting that, in the light of the *Mitsui* decision, it had no duty to defend under the 2015 and 2016 policies. (Dkt. 72 at 10–15; Dkt. 64 ¶¶ 62–76.) Section 155 of the Illinois Insurance Code provides that:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and <u>it appears to the court</u> that such action or delay is vexatious

---

[11] Given that the Gates lawsuit is ongoing, it is not clear how the Court could, at this time, enter a breach of contract judgment in Thermoflex's favor for money damages for Harleysville's failure to defend up until now. Those damages have not been briefed and are presumably in flux as the underlying litigation proceeds. As a result, the better course is to order Harleysville to comply with its obligations as part of the declaratory judgment being contemporaneously entered. If Harleysville, for whatever reason, refuses to comply with its retroactive or prospective obligations, Thermoflex will have a viable breach of contract claim. Accordingly, Thermoflex is not entitled to summary judgment on the breach of contract counts at this time; but those counterclaims remain alive.

and unreasonable, <u>the court may allow</u> as part of the taxable costs in the action <u>reasonable attorney fees</u>. . . .

215 ILCS 5/155(1) (emphasis added).

Section 155 provides an "extracontractual remedy to policyholders when the insurer's refusal to recognize liability and pay a claim under the policy is vexatious and unreasonable." *Kroutil v. State Farm Mut. Auto. Ins. Co.*, 2021 IL App (4th) 210238, ¶ 17. An insurer's conduct is vexatious and unreasonable "when 'the evidence shows that the insurer's behavior was willful and without reasonable cause.' " *P&M/Mercury Mech. Corp. v. W. Bend Mut. Ins. Co.*, 483 F. Supp. 2d 601, 603 (N.D. Ill. 2006) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000)). By contrast, an insurer "does not act vexatiously and unreasonably when (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.*

Although no party addresses this, Thermoflex's decision to style its request for attorney fees as a counterclaim likely is procedurally improper. Section 155 is a procedural remedy that "does not create a cause of action." *Hennessy Indus. v. Nat'l Union Fire Ins. Co.*, 770 F.3d 676, 679–680 (7th Cir. 2014*); see also Moles v. Ill. Farmers Ins. Co.*, 2023 IL App (1st) 220853, ¶ 19, ("[S]ection 155 does not create an independent tort for which an insurance company can be held liable."); *Natl. Union Fire Ins. Co. of Pittsburgh, PA v. Lovekamp*, No. 23 C 13103, 2025 WL 473982, at *4 (N.D. Ill. Feb. 12, 2025) ("Here, defendant is attempting to plead a bad faith claim

based on section 155 as a separate Count II. Because section 155 does not provide for a stand-alone claim, that is procedurally suspect.") Rather, Section 155 "supplements the remedies otherwise available in an action for breach of contract, breach of the tort-based duty to settle . . . [,] or another tort." *Wolf v. Riverport Ins. Co.*, 132 F.4th 515, 519 (7th Cir. 2025). Accordingly, the Court strikes Count V of Thermoflex's Amended Counterclaims (Dkt. 64) and instead construes it as a motion for attorney fees under Section 155.

Although the question of whether conduct is vexatious and unreasonable under Section 155 has been described by Illinois courts as "a factual issue,"[12] it appears to be one that is committed to the Court's discretion (not to a jury). *See Evergreen Real Estate Servs., LLC v. Hanover Ins. Co.*, 2019 IL App (1st) 181867, ¶ 35 ("Whether to sanction a party under section 155 is an exercise that is typically replete with discretion. Section 155 itself provides that the court *may* impose attorney fees or a variety of other sanctions when *it appears to the court* that the conduct is vexatious and unreasonable.") (emphasis in original); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, No. 03-1224, 2005 WL 3690570, at *2 (C.D. Ill. Oct. 12, 2005) ("It is well-established that it is the court that must make the ultimate determination as to whether or not a party is entitled to attorney's fees and penalties where an insurance company's delay was vexatious and unreasonable."). Further, "the existence of a bona fide dispute precludes . . . recovery" under Section 155 as a matter of law. *Nine Grp. II, LLC v. Liberty Int'l Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 61.

---

[12] *Boyd v. United Farm Mut. Reinsurance Co.*, 596 N.E.2d 1344, 1349 (1992).

Turning to the merits given that both parties have addressed the issue, Thermoflex argues that Harleysville's continued refusal to defend Thermoflex in the Gates lawsuit, following *Mitsui*, was vexatious and unreasonable, and that discovery is necessary to evaluate the reasonableness of Harleysville's decision. (Dkt. 80 at 12–14.) Thermoflex specifically takes issue with a letter sent by Harleysville counsel requesting that Thermoflex withdraw its tender of defense in light of *Visual Pak* and *Mitsui*.[13] (*See* Dkt. 72-2.) In response, and in subsequent letters, Thermoflex argued that Harleysville's position on the Violations of Law exclusion was improper given *Mitsui*. (*See* Dkt. 82 ¶¶ 6–10; Dkt. 82-1–3.) In essence, Thermoflex complains that the same arguments presented here on summary judgment were in bad faith when asserted in out-of-court discussions between the parties. (*See* Dkt. 66 ¶¶ 62–76.)

Although the Court agrees that Harleysville's continued insistence that it had no duty to defend under the 2015 and 2016 policies was incorrect under *Mitsui*, the Court does not agree with Thermoflex that—at least on the present record—Harleysville's position was so vexatious or unreasonable as to constitute bad faith under Section 155. As the divide between Illinois courts, fellow courts in this District, and the Seventh Circuit on the application of BIPA to similar insurance policy exclusions makes clear, and as the repeated filing of notices of supplemental authority by the parties along with oral argument confirms, this is an unsettled and

---

[13] In its May 31, 2024 letter, Harleysville wrote that, "Based upon the Illinois Appellate court's decision in *Visual Pak* and the Seventh Circuit's decision in *Mitsui*, it is clear that both the Violations of Law Exclusion as well as the Access Or Disclosure Exclusion directly apply to bar coverage for Thermoflex for the underlying Gates Class Action Lawsuit." (Dkt. 72-2 at 5.)

fast-moving area of law—it appears therefore to be a *bona fide* dispute that precludes recovery under Section 155. Accordingly, Thermoflex's request for attorney fees under Section 155 is denied.

## IV. CONCLUSION

Harleysville's motion for summary judgment (Dkt. 72) and Thermoflex's motion for partial summary judgment (Dkt. 74) are granted in part and denied in part. Thermoflex is entitled to a judgment as to liability against Harleysville on Counts I and II of Harleysville's complaint with respect to the 2015 and 2016 policies, but Harleysville is entitled to a judgment of no liability with respect to the 2017 policy. Because Harleysville has a duty to defend under the 2015 and 2016 polices, Thermoflex is entitled to summary judgment on Counts I–II (declaratory judgment) of its Amended Counterclaims as to the 2015 and 2016 policies. (Dkt. 64.) Thermoflex's motion for summary judgment as to Counts III–IV of its Amended Counterclaims is denied, although Harleysville is now liable to Thermoflex consistent with this opinion. Thermoflex's request for attorney's fees is denied without prejudice. SO ORDERED in No. 21-cv-01710.

Date: September 30, 2025

JOHN F. KNESS
United States District Judge

24